KATE N. HOHENSHELL, APPELLANT, V. ARCHIBALD HOHEN-SHELL, APPELLEE.

FILED SEPTEMBER 20, 1915.   No. 18153.

Homestead: CONVEYANCE: COMPETENCY OF WIFE. Under the evidence set forth in the opinion, *held*, that at the time of the execution and acknowledgment of the deed of conveyance of the family homestead to the. defendant the wife was incompetent, and the conveyance was, therefore, void.

APPEAL from the district court for Cass county: GEORGE F. CORCORAN, JUDGE. *Reversed with directions.*

*Matthew Gering* and *C. S. Polk,* for appellant.

*Rawles & Robertson, contra.*

LETTON, J.

This is an action to set aside a conveyance of real estate executed by Joseph Hohenshell and his wife in their lifetime to their son, Archibald Hohenshell. The plaintiff alleges that she is one of two surviving children, sole heirs of her deceased father and mother; and that in April, 1904, when her parents were incompetent, the defendant, by fraudulently representing that he was procuring a lease for a tenant for a part of the land, or a release of a mortgage held by them, procured his parents to go through the form of signing a deed which purported to convey to him the 320 acres of land in controversy, subject to the homestead right of the grantors; that the deed was never

acknowledged nor delivered; that the parents continued to live on the land until their respective deaths; that the defendant never sought to dispossess them or claim ownership of the land as long as they lived; and that she is the owner of an undivided one-half interest in the real estate.

The answer admits the execution of the deed; denies fraud; alleges that as soon as the deed was made defendant took possession, and has ever since held it in his own name with the knowledge and acquiescence of his parents; that he has placed valuable improvements on the land, amounting to the value of $3,250; that the consideration for the deed was the maintenance and care of his parents, both in sickness and health, and the payment of the expenses of the last sickness and funeral expenses; that the deed has been executed more than eight years, and recorded more than seven years in the county where the plaintiff resides; and that she is barred by lapse of time. The other material allegations of the petition are denied. The district court found for the defendant, and plaintiff appeals.

The facts developed by the testimony are somewhat peculiar. In the first place, there is a direct issue raised as to whether the plaintiff is the daughter of Joseph Hohenshell and Jamima Hohenshell. A consideration of the testimony on this point leads us to the conclusion that the plaintiff was born sometime before the marriage of Jamima Hohenshell and Joseph Hohenshell, and that she is the daughter of Jamima. After the marriage she became a member of the family, and was known by the name of Kate N. Hohenshell. The family lived at first in Pennsylvania, and afterwards moved to Ohio. She eloped and was married in 1868, in Iowa, to David Hohenshell, a cousin. In 1869, and after her marriage, the other members of the family moved to Nebraska. Plaintiff and her husband moved to this state in 1879. The testimony seems to establish that kindly relations existed for many years between Mr. and Mrs. Hohenshell, seniors, and the plaintiff, they speaking of her and recognizing her as their daughter. Plaintiff testifies to the entry of her name in a

family Bible; but the Bible itself was not produced, and she does not know where it is.

As to the execution of the deed, it appears that Joseph Hohenshell had suffered from an injury to his leg, and to relieve the pain morphine had been administered by a physician. He became slightly addicted to the use of the drug. At the time the deed was executed Joseph Hohenshell was about 73 years of age and his wife was aged about 75 years. Some time previous to this Mrs. Hohenshell had become strongly addicted to the use of morphine, first taking it through the stomach and afterwards by hypodermic injections. The circumstances attending the execution of the deed are about as follows: Some time before the deed was executed Joseph Hohenshell had employed a lawyer to act for him in a case involving the boundary lines of his land. On the last day of the trial of this case he told his attorney that he wanted to convey his real estate and personal property to his son, Archibald; that Archibald had always remained at home and taken care of him and his wife without compensation. He also said that Mrs. Hohenshell had a daughter by a prior marriage that was not his child. The attorney testified that he afterwards received instructions to prepare the papers, which he did and mailed them to Mr. Hohenshell, and that they were afterwards returned to his office properly executed. It is his impression that he gave them to Archibald afterwards. He testifies that, in his opinion, Mr. Hohenshell was mentally sound and competent to convey at the time of this transaction. It is shown that at the time the deed was executed a notary public had been called to the house to take the acknowledgment of the parties to the release of a mortgage, and that, just before he left, Archibald said there were some other papers that ought to be executed. He then procured the papers from a desk, and took them to another room, where they were signed by his father and mother and there acknowledged. There is no proof that the signatures were obtained by means of a fraudulent substitution of papers, as alleged.

There is a large mass of testimony with respect to the use of morphine and the resultant effects upon the mental condition of Jamima Hohenshell, both before and after the time of the execution and acknowledgement of this deed. She would waver and vacillate in her actions, and was often inconsistent in her statements. At one time she declared that they had given the property to Archibald in return for what he had done for them, and that she was satisfied with his conduct otherwise; at other times she found serious fault with the manner in which he treated her, claiming that, against her wishes, he brought into the household and retained there a woman of ill repute, who suffered several miscarriages while there. At one time she signed a petition to set aside this deed, alleging that her husband had had a paralytic stroke, and was *non compos mentis* at the time the deed was made; that she was unable to read or write; and was also incompetent at that time on account of her excessive use of morphine and other opiates. Some time after this petition was signed, Mrs. Hohenshell seemed to become concerned as to its execution, and said she did not understand what she had signed, and that she desired to revoke it and confirm the deed to Archibald.

Taking the whole testimony with respect to the mental condition and competency of Mrs. Jamima Hohenshell, and considering that of the medical experts, we are driven to the conclusion that, at the time she signed and acknowledged the conveyance in question, her age and the habitual use of the drug had so affected her mental faculties that she was incompetent to fully know or understand the nature and consequences of the act which she then performed. It is true that the notary, who was there merely for a few moments, and the other witnesses present testify that they saw nothing unusual in her conduct at the time; but this we think is not enough, when considered in connection with all the other evidence. We are satisfied that a conveyance of a homestead executed by a wife under such circumstances ought not to stand. The deed and acknowledgment being invalid as to the wife, by reason of

the homestead character of the land and the statutory requirements for the conveyance of a homestead, it was absolutely void as to the husband also.

Joseph Hohenshell died in 1910. By virtue of section 1, ch. 23, Comp. St. 1909, then in force, the land descended, subject to debts and the widow's homestead right, "one-half to the husband or wife if the survivor is the parent of all the children of the deceased and there be only one child, or the issue of a deceased child, surviving." By force of this provision, since there was only one surviving child of the deceased at her husband's death, Jamima became the owner in fee of one-half of the real estate. Upon her subsequent decease, Archibald and Kate, the plaintiff, being her only children and heirs, inherited equal shares of her land. Archibald, therefore, by descent from both parties, is the owner of an undivided three-quarters interest in the real estate. Plaintiff, by inheritance from her mother, is the owner of an undivided one-fourth interest.

The judgment of the district court is reversed and the cause remanded, with directions to set aside the conveyance, to enter a decree in accordance with this opinion, and to take such other proceedings as may be required under the issues. ·

REVERSED.

BARNES, FAWCETT and HAMER, JJ., not sitting.